IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MURRAY GARRETT,<br><br>Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD CO.,<br><br>Defendant. | **8:23CV244**<br><br>**MEMORANDUM AND ORDER** |

This is a disability discrimination case.  It comes before the Court on Defendant's, Union Pacific Railroad Company's ("UP"), motion for summary judgment.  Filing No. 70. Because Plaintiff, Murray Garrett, concedes part of the motion but the Court finds disputes of material fact preclude summary judgment on the remainder, the Court grants in part and denies in part the motion.

## I.    BACKGROUND

Plaintiff, Murray Garrett, resides in Houston Texas and began working for UP, a railroad carrier headquartered in Omaha, beginning in 2002.  Filing No. 72 at 1; Filing No. 80 at 1.   Most recently, Garrett worked as a Flagging Foreman in the engineering department in McLean, Illinois.  Filing No. 72 at 1; Filing No. 80 at 1.  As a Flagging Foreman, Garrett drove his vehicle to inspect and set out flags every day on the tracks to keep trackmen (who work near the track) safe.  Filing No. 75-1 at 6, 9, 16 17.  This required Garrett to work near moving trains and work alone.  Id. at 19, 25.

On July 9, 2016, while off-duty, Garrett was seriously injured in a motorcycle accident.  Id. at 8.   Garrett suffered severe pelvic crushing, leg injuries, and rhabdomyolysis, leaving him hospitalized for forty days.  Id. at 34; Filing No. 85 at 1.

1

Hospital staff attempted to place a central venous line but misplaced it in Garrett's carotid artery, causing multiple embolic strokes. Filing No. 75-1 at 28; Filing No. 83-2 at 34. After his eventual discharge, Garrett engaged in extensive physical therapy. Filing No. 85 at 1.

UP placed Garrett on a medical leave of absence from July 9, 2016 (the date of his accident), to September 1, 2016. Filing No. 75-1 at 189. UP required Garrett to undergo a fitness-for-duty review performed by its Associate Medical Director, Dr. Matthew Hughes, prior to returning to work. Filing No. 83-3 at 13. UP extended Garrett's medical leave of absence to July 9, 2017, and required Garrett to submit medical records for its review. Filing No. 75-1 at 103, 210. On May 11, 2017, Dr. Joshua Gary, Garrett's orthopedic doctor, released Garrett to work with regular duties starting June 6, 2017. Filing No. 83-12 at 2. Garrett's cardiologist, Dr. Hue-Teh Shih, also released Garrett to full-time work with no restrictions. Filing No. 83-2 at 40–41.

On May 24, 2017, Dr. Hughes imposed sudden-incapacitation restrictions on Garrett for a period of five years. Filing No. 75-1 at 102 ("Due to multiple CVA [cerebral vascular accidents], it is determined that he is at increased safety risk for 5 years per FMCSA medical guidelines, which UPRR follows for making FFD determination."). Dr. Hughes testified that if any employee had a stroke in the cortex or subcortex of the brain, they would receive five-year sudden incapacitation restrictions in accordance with the FMCSA handbook guidelines. Filing No. 83-3 at 21–24. The FMCSA Medical Examiner provides medical guidance to the trucking industry but was adopted by UP to guide its fitness-for-duty evaluations because the FRA lacks a similar handbook. Filing No. 73-2 at 5–6. However, by the time of Garrett's fitness-for-duty evaluation, the FMCSA had

removed and disavowed the handbook as outdated. *Qualification of Drivers; Exemption Applications*; Diabetes Mellitus, 83 FR 40641-01 ("The handbook was removed from the FMCSA website in 2015 because the content is not in line with the current regulations and therefore is not endorsed by the Agency for use.").

Dr. Hughes testified his decision was based on the fact Garrett had a cortical stroke, and he did not need to consider whether Garrett had residual symptoms or deficits from his stroke or the treatment he had undergone in recovery. *Id.* at 30, 34. Dr. Hughes estimated he spent a couple of hours reviewing Garrett's medical records and making the decision to impose restrictions. Filing No. 83-3 at 38–39.

Based on the work restrictions imposed on Garrett, Russell Lloyd, Director of Construction for UP, opined Garrett would be unable to perform his duties as Flagging Foreman. Filing No. 83-7 at 20–21. As a result, Garrett sought alternate employment, which he eventually found as a Flagger at RailPros. Filing No. 75-1 at 5. Garrett performed the same job as a Flagger at RailPros as he had been doing as a Flagging Foreman with UP. Filing No. 85 at 6–7.

Garrett filed suit against UP for disability discrimination. UP retained expert Dr. Pierre Fayad. Filing No. 75-1 at 904. Dr. Fayad opined that he sometimes recommends patients cannot return to work following a stroke. Filing No. 83-9 at 27–28. However, he stated that Garrett's risk of seizure likely fell below 1% within two years following his stroke based on the studies he had cited in his report. *Id.* at 78–79.

Garrett retained Dr. Kevin Trangle, a doctor specializing in occupational and internal medical. According to Dr. Trangle, the strokes resulted in infarcts in Garrett's brain but no long-term sequelae. Filing No. 83-13 at 80. Dr. Trangle opined that Garrett's

3

risk of recurrent stroke is low because the cause of the stroke (a medical error) is not going to recur.  Filing No. 83-13 at 77–78.  He also opined that Garrett's risk of stroke was under 1% at one year, and even taking a very conservative approach, he was safe to return to work at that time.  *Id.* at 79, 93.

UP now moves for summary judgment.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "an adverse party cannot produce admissible evidence to support" a fact essential to the nonmoving party's claim.  Fed. R. Civ. P. 56(c)(1)(A) & (B).  The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

"The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'"  *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp.,* 477 U.S. at 323).  If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for

trial.'" *Id.* (*quoting Celotex Corp.*, 477 U.S. at 324).  A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).  "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).  If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Anderson*, 477 U.S. at 251.

### III.    ANALYSIS

The ADA forbids an employer to discriminate against its employees because of a disability. *Canning v. Creighton Univ.*, 995 F.3d 603, 614 (8th Cir. 2021) (citing 42 U.S.C. § 12112(a)).  To establish a claim under the ADA, a plaintiff must show that: (1) he is "disabled" within the statutory definitions, (2) he is "qualified" to perform the essential functions of the job, and (3) he suffered an adverse employment action under circumstances from which an inference of unlawful discrimination can be drawn. *Olsen v. Cap. Region Med. Ctr.*, 713 F.3d 1149, 1153–54 (8th Cir. 2013).  Garrett alleges he was discriminated against because of his disability and that UP employed procedures that screened out individuals with disabilities.   UP moves for summary judgment on those claims.

### A. Disparate Treatment Disability Discrimination Claim

Garrett's first claim arises under 42 U.S.C. § 12112(a)). He claims UP discriminated against him on the basis of a disability when it imposed sudden incapacitation restrictions on him based on what it believed to be his increased risk of seizure or stroke. UP argues it is entitled to summary judgment on this claim because there is no evidence Garrett was disabled, Garrett has not met his evidentiary burden, Garrett was not qualified to perform the essential functions of his job, there is no causal connection between Garrett's removal from service and his purported disability, and UP has a complete defense to a claim of discrimination because it acted to protect workplace safety. The Court addresses these arguments in turn.

#### 1. Regarded as Disabled

UP first contends it is entitled to summary judgment because there is no evidence Garrett was disabled within the meaning of the ADA.

The ADA provides a three-pronged definition for determining when an individual is disabled under 42 U.S.C. § 12102(1):

(1) The term "disability" means, with respect to an individual—

   (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

   (B) a record of such an impairment; or

   (C) being regarded as having such an impairment

UP argues Garrett has failed to meet any of the three definitions of "disabled." Garrett concedes he did not have an actual disability or a record of a disability; he states he is only proceeding only on a "regarded-as-disabled" theory of his case. Accordingly,

to the extent Garrett's complaint asserts "actual" and "record of" disability claims, UP is granted summary judgment on those claims.

As to Garrett's claim that UP regarded him as disabled, "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A); *accord* 29 C.F.R. § 1630.2(I)(1).

UP argues it did not regard Garrett as disabled because it imposed restrictions on him based on the future risk of incapacitation from a seizure, not due to any presently existing medical condition. It relies on *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104 (8th Cir. 2016), arguing that a regarded as claim does not extend to concerns that there is an unacceptable risk that an employee may develop a future impairment.

In *Morriss*, the Eighth Circuit found BNSF did not discriminate when it terminated an obese employee based on the safety risks his obesity potentially posed. *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1113 (8th Cir. 2016). In so finding, the court ruled that obesity is a physical characteristic, like height or muscle tone, and not a physical impairment unless the obesity is the result of a physiological disorder. *Id.* at 1108–09. The court determined that while the ADA does prohibit discrimination based on a perceived physical impairment, it does not prohibit discrimination based on a perceived physical characteristic that creates an increased risk of a future adverse event. *Id.* at 1113.

By contrast, an existing physical impairment can constitute the basis for a regarded-as discrimination claim, as the Eighth Circuit recently reiterated in *Meza v. Union Pac. R.R. Co.*, 144 F.4th 1115, 1116 (8th Cir. 2025). The plaintiff in *Meza* suffered a motorcycle accident that led to a brain hemorrhage and brain injury. *Id.* Although his doctor cleared him to return to work, his employer feared his brain injury could cause unpredictable seizures and imposed work restrictions on him. *Id.* Meza filed a "regarded as" disability discrimination claim against the employer, but the district court granted the employer summary judgment. *Id.* at 1117. In finding the district court had improperly granted the employer summary judgment, the Eighth Circuit distinguished Meza's situation from the *Morriss* case:

> *Morriss* is distinguishable from this case in one important way. The record there showed that the company feared that a current "physical characteristic" could "eventually lead to a[n] . . . impairment." Here, by contrast, there is a genuine issue of material fact about whether the chemical alteration the examiner identified was itself an impairment, even if it would only be clear to others if Meza began having seizures. Like the heart condition from *Sanders* [*v. Union Pac. R.R. Co.*, 108 F.4th 1055 (8th Cir. 2024)], the perceived brain changes here could qualify as an existing physical impairment.

*Id.* at 1118 (citations omitted).

This case is more akin to *Meza* and *Sanders* than *Morriss*. Garrett suffered multiple embolic strokes which caused infarcts, or permanent damage to his brain tissue. It was on the basis of this physical impairment to his brain that Garrett alleges UP regarded him as disabled, not a physical characteristic (like obesity) such as in *Morriss*. Accordingly, UP is not entitled to summary judgment on Garrett's claim on the basis that there are no facts to support a "regarded as" theory of disability discrimination.

### 2. Direct Evidence v. Burden Shifting

UP next argues Garrett has no direct evidence of discrimination and fails to adduce any evidence to support a finding it acted as a pretext to discrimination under the applicable burden-shifting framework.

An ADA plaintiff may survive a defendant's summary judgment motion in one of two ways—by presenting either direct or inferential evidence of discrimination. *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1034 (8th Cir. 2007). "[D]irect evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Id.* (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004); *see also Brown v. City of Jacksonville*, 711 F.3d 883, 888 (8th Cir. 2013). Without direct evidence of disability discrimination, a plaintiff's claim falls under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 755 (8th Cir. 2016). Under that paradigm, the plaintiff first has the burden of establishing a prima facie case: (1) that the plaintiff was disabled, or regarded as disabled, within the meaning of the ADA; (2) that the plaintiff was qualified to perform the essential functions of the job; and (3) there is a causal connection between an adverse employment action and the disability. *Id.* If the plaintiff fails to establish any element of his prima facie case, summary judgment is proper. *Kellogg v. Union Pac. R. Co.*, 233 F.3d 1083, 1086 (8th Cir. 2000); *see also Parker v. Crete Carrier Corp.*, 839 F.3d 717, 724 (8th Cir. 2016) (involving "regarded as" claims). If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason

for the adverse action. *Parker*, 839 F.3d at 724. If the employer makes such a proffer, the burden shifts back to the plaintiff to show that the employer's stated reason is a pretext. *Id.*

Here, there is sufficient evidence that UP acted because of a perceived impairment, specifically the damage to Garrett's brain, as set forth above. Garrett satisfies this prong because "the defendant acknowledges relying on the plaintiff's [impairment] in reaching the employment decision." *Sanders*, 108 F.4th at 1062. For example, the employee in *Sanders* showed direct evidence because UP "stopped Sanders from working as a foreman general because it believed he had diminished cardiovascular health." *Id.* at 1061. Same here. The fitness for duty decision identified Garrett's stroke as the reason for implementing work restrictions. As discussed above, such physical changes to the brain are impairments within the meaning of the ADA. Accordingly, there is direct evidence by which a jury could conclude UP imposed work restrictions with discriminatory animus.

UP argues the Court must proceed under the *McDonnell Douglas* burden-shifting framework instead. It argues that because its imposition of work restrictions was motivated by safety concerns, such action cannot be discriminatory. UP's argument is inapposite in examining in the elements of Garrett's claim. Rather, the validity and implications of alleged safety concerns are to be considered in the context of UP's affirmative defense that Garrett posed a direct threat. Merely asserting that it acted to protect workplace safety does not negate the fact UP admittedly acted on the basis of Garrett's brain impairment. This is direct evidence, and the Court need not engage in the burden-shifting analysis.

10

### 3. Qualified to Perform the Essential Functions of the Job

UP next argues it is entitled to summary judgment because Garrett was not qualified for the Flagging Foreman job.

The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Essential functions are the "fundamental job duties of the employment position." 29 C.F.R. § 1630.2(n)(1). To the extent that an employer challenges an ADA plaintiff's claim that he or she can perform the job's essential functions, the burden of production is on the employer to come forward with evidence of those essential functions. *See EEOC v. Wal-Mart*, 477 F.3d 561, 568 (8th Cir. 2007).

UP argues Garrett was not qualified for the Flagging Foreman job at the time it imposed restrictions because the evidence shows some period of restriction was warranted, and Garrett could not safely perform his job during that time. UP once again conflates its affirmative defense with the elements of Garrett's claim. The qualified-individual analysis focuses on Garrett's ability to perform his job's essential functions, not on whether his performance of such functions posed a safety risk. The Court reserves the analysis of safety concerns for UP's affirmative defense where it properly belongs.

As to UP's argument that a period of restriction was necessary, there is conflicting evidence that precludes summary judgment. While Dr. Hughes opined that a five-year restriction was warranted, Garrett's own doctors cleared him to work. UP argues Dr. Trangle agreed with a one-year restriction period, but his actual testimony was that one-year was *more* than sufficient under a very conservative approach. Furthermore, Garrett

11

had performed the Flagging Foreman job capably and continued to perform it at another employer after his departure from UP.  *See Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 901 (8th Cir. 2006) (holding that, in the context of a Rule 50 motion, evidence the plaintiff maintained a forklift license, operated a forklift during his employment, and continued to operate a forklift at a new employer was ample evidence by which the jury could find he was a "qualified individual" within the meaning of the ADA).

Garrett also argues he was qualified for a job as a Trackman, the lower level job below a Flagging Foreman.  However, because he failed to assert a failure-to-accommodate claim, his ability to perform roles other than the Flagging Foreman job are immaterial.  *See also Duello v. Buchanan Cnty. Bd. of Sup'rs*, 628 F.3d 968, 972 (8th Cir. 2010) ("Under long-held circuit precedent, 'regarded as' plaintiffs are not entitled to reasonable accommodations because the ADA was not intended to grant reasonable accommodations to those who are not actually disabled.").  However, since there are disputes of fact over whether he was qualified to perform the Flagging Foreman job, the Court denies UP summary judgment on this prong.

### 4.  Causal Connection

UP also argues that Garrett cannot connect UP's actions to a discriminatory motive because it claims it acted out of a concern for worker safety.  Once again, this argument is better considered under UP's affirmative defense of direct threat, not in the context of the elements of Garrett's discrimination claim.  Accordingly, this is not a basis to grant UP summary judgment.

Because disputes of material fact exist as to Garrett's claim of disparate-treatment disability discrimination, UP is not entitled to summary judgment.

### 5. *Union Pacific's Direct Threat Defense*

UP argues that, even if Garrett's discrimination claim survives, the Court must grant it summary judgment on its affirmative direct threat defense.

The ADA allows for a defense to a claim of discrimination if an employer can show that the employee would "pose a direct threat to the health or safety . . . in the workplace." 42 U.S.C. § 12113(b). In the Eighth Circuit, the burden is on the employer to prove a direct threat. *EEOC v. Wal–Mart*, 477 F.3d at 571–72. "The direct threat defense must be 'based on a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence,' and upon an expressly 'individualized assessment of the individual's present ability to safely perform the essential functions of the job,' reached after considering, among other things, the imminence of the risk and the severity of the harm portended." *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 86 (2002) (quoting 29 C.F.R. § 1630.2(r)); s*ee also EEOC v. Wal-Mart Stores*, 477 F.3d at 571. In making this judgment, the employer must consider: "(1) [t]he duration of the risk; (2) [t]he nature and severity of the potential harm; (3) [t]he likelihood that the potential harm will occur; and (4) [t]he imminence of the potential harm." 29 C.F.R. § 1630.2(r). This individualized analysis is necessary "in order to 'protect disabled individuals from discrimination based on prejudice, stereotypes, or unfounded fear.'" *EEOC v. Wal-Mart Stores*, 477 F.3d at 571 (quoting *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1248 (9th Cir. 1999)).

Here, a reasonable jury could find, based on the evidence in the record, that UP did not conduct an adequately individualized assessment and did not rely on the most current medical knowledge in concluding Garrett posed a risk to workplace safety.

First, a jury could conclude that UP's assessment was not sufficiently tailored to Garrett's situation.  UP did not evaluate Garrett on an individualized basis in determining he should be held out of service but rather had a blanket policy that anyone who had a stroke must automatically receive a five-year sudden incapacitation restriction.  It also disregarded the opinion of Garrett's doctors that he was able to safely return to work.

Second, a reasonable jury could find UP did not rely on the most current medical knowledge in making its decision.  UP relied on the FMCSA handbook which had been disavowed as outdated by the FMCSA itself by that time.  Furthermore, Garrett adduced evidence that other medical studies showed a far lower risk of incapacitation from Garrett's medical condition, requiring a shorter period of restriction than the five years mandated by the outdated handbook.

UP is therefore not entitled to summary judgment on its affirmative defense of direct threat.

### B.  Unlawful Screening Discrimination Claim

UP purported to move for summary judgment on Garrett's unlawful screening claim, but aside from a cursory mention in its introduction, it advanced no meaningful argument why summary judgment was warranted.  This alone is basis for denying its request for summary judgment on this claim.  But even if the Court were to consider the merits of the claim, it would still find UP is not entitled to summary judgment.

Discrimination also includes the use of "qualification standards, employment tests, or other selection criteria that screen out or tend to screen out an individual with a disability."  42 U.S.C. § 12112(b)(6).  Qualification standards include "medical, safety and other requirements established by [an employer] as requirements . . . to be eligible for the

14

position held or desired." 29 C.F.R. § 1630.2(q).  An employer has an affirmative defense to a charge of discrimination for qualification standards that deny job benefits to individuals with disabilities if the standards are "shown to be job-related for the position in question and . . . consistent with business necessity."  42 U.S.C. § 12113(a).

In its reply brief, UP argues Garrett was required to plead his unlawful screening claim as a disparate-impact claim rather than a disparate-treatment claim.  In addition to being improperly raised in a reply brief, this is simply untrue, and the Court declines to grant judgment on Garrett's claim, even if Defendant believes it could have been differently pled.  *See* *Baldwin v. Union Pacific Railroad Co.*, No. 8:22CV87, 2023 WL 12236865, at *7 (D. Neb. Oct. 3, 2023) (Plaintiff's unlawful screening disparate-treatment claim survives summary judgment), *Brasier v. Union Pac. R.R. Co.*, No. CV2100065TUCJGZMSA, 2023 WL 2754007, at *11 (D. Ariz. Mar. 31, 2023) ("Under *either* a disparate-treatment or disparate-impact theory, Brasier may prove his prima facie case for unlawful screening by establishing that Union Pacific's 1% rule screened him out on the basis of his disability." (emphasis added)).

There is evidence by which the factfinder could determine UP's incapacitation rules screened Garrett out on the basis of his disability, namely the changes to his brain.  As set forth above, the jury could conclude that the adopted FMCSA policy was a blanket rule that applied an unnecessarily long restriction period, thereby affecting those with a disability like Garrett.  UP is not entitled to summary judgment on this claim.

IV.    CONCLUSION

For the foregoing reasons, UP is entitled to summary judgment only on those claims Garrett has conceded he is not pursuing: discrimination on the basis of an actual

15

disability and discrimination on the basis of a record of a disability. Disputes of material fact preclude granting the remainder of UP's motion for summary judgment. Accordingly,

IT IS ORDERED:

1. Union Pacific's motion for summary judgment, Filing No. 70, is granted as to Garrett's claim for "actual" and "record of" disability discrimination and is denied in all other respects.

Dated this 13th day of April, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge